

FILED

2016 MAY -3 PM 2: 18

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: TH  DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA CHYBA,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>BAYVIEW LOAN SERVICING, LLC aka BAYVIEW and MARILYN CORO,<br><br>　　　　　　　　　Defendants. | Case No.: 14cv1415 BEN (BLM)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(3) REQUIRING COMPLIANCE WITH LOCAL RULES** |

　　　Before this Court are the Parties' cross-motions for summary judgment. This case arises out of the actions taken by Defendants Bayview Loan Servicing, LLC and Marilyn Coro in an attempt to service Plaintiff's mortgage loan. For the reasons stated below, the Court grants in part and denies in part Defendants' Motion and denies Plaintiff's Motion.

### BACKGROUND

**I.　Factual Background**

　　　Plaintiff Pamela Chyba obtained a mortgage loan from Ryland Mortgage Company in 2005. (Def. Mot., Decl. of Randall Jackson ("Jackson Decl.") Ex. A.) The loan was

1

14CV1415

1 secured by a deed of trust on real property located in Texas. (Def. Mot., Jackson Decl.
2 Ex. B.) Mortgage Electronic Registration Systems, Inc. ("MERS") was named as the
3 beneficiary of the deed of trust. (*Id.*) On January 21, 2011, all beneficial interest under
4 the deed of trust and the note was transferred to The Bank of New York Mellon. (*Id.*)

5       On September 26, 2012, Bank of America sent a letter to Plaintiff, notifying her
6 that the mortgage loan would be transferred to a new servicer on October 16, 2012. (Def.
7 Mot., Jackson Decl. Ex. C.) The new servicer was Bayview Loan Servicing LLC. (*Id.*)
8 On October 26, 2012, Bayview sent a Transfer of Service Notice to Plaintiff, informing
9 her that the loan, which was previously serviced by Bank of America, would now be
10 serviced by Bayview. (Def. Mot., Decl. of Leslie Collazo ("Collazo Decl.") Ex. F; Pl's
11 Opp'n Ex. 1.) Defendant Coro, First Vice President of Bayview, signed the letter. (*Id.*)
12 On October 30, 2012, Ms. Coro sent a Debt Validation Letter to Plaintiff. (Collazo Decl.
13 Ex. G; Pl's Opp'n Ex. 2.) The validation letter stated that the owner of the loan was The
14 Bank of New York Mellon, the previous servicer was Bank of America, and the current
15 amount of the debt due was $153,664.77. (Collazo Decl. Ex. G; Pl's Opp'n Ex. 2.)

16       On November 9, 2012, Bayview sent a letter to Plaintiff requesting proof of hazard
17 insurance for the property. (Pl's Opp'n Ex. 6.) On November 14, 2012, Plaintiff sent a
18 letter to Bayview disputing the debt and requesting validation. (Pl's Opp'n Ex. 3.) She
19 specifically asked for "competent evidence that [she has] some contractual obligation to
20 pay" Bayview. (*Id.*) On November 20, 2012, Plaintiff sent a "qualified written request"
21 to Bayview, asking for considerable irrelevant information. (Pl's Mot. Ex. 3; Pl's Opp'n
22 Ex. 4.) Also on November 20, 2012, Bank of America sent Plaintiff another letter
23 confirming that Bayview was servicing the loan and informing Plaintiff that a payment
24 history on the loan would be sent under separate cover, as Plaintiff requested. (Jackson
25 Decl. Ex. D.) The following day, Bank of America sent the requested payment history.
26 (Jackson Decl. Ex. E.) The payment history shows that someone made payments on the
27 loan from 2005 through September 3, 2010 to Bank of America. (Jackson Decl. Ex. E.)
28 The Court held a motion hearing on April 18, 2016, and questioned Plaintiff about who

1  the last servicer or creditor was that she paid. Plaintiff would not answer.[1]

2  On December 10, 2012, Bayview sent another notice to Plaintiff, following up on proof of insurance for the property. (Pl's Opp'n Ex. 7.) On December 14, 2012, Bayview responded to Plaintiff's letters disputing the debt. (Collazo Decl. Ex. H.) Bayview's December 14 response included (1) an October 2010 letter from Bank of America stating who the current creditor was, (2) the Note stating who the original creditor was; (3) Bank of America's September 2012 transfer of service letter; (4) Bayview's October 2012 transfer of service letter; (5) Bank of America's loan payment history; and (6) Bayview's loan payment history. (Def. Opp'n, Collazo Decl. Ex. F.) Bayview's loan payment history indicates that no one made payments on the loan since Bayview became servicer. There is no evidence in the loan file that the October and December 2012 letters were ever returned. (Docket No. 90, Decl. of Sara Torres ¶ 6.)[2]

Nearly one year later, on October 1, 2013, Bayview sent a debt collection letter to Plaintiff. (Pl's Opp'n Ex. 9.) That same day, Bayview checked Plaintiff's credit report. (Pl's Mot. Ex. 12.) On November 21, 2013, Bayview sent another debt collection letter to Plaintiff. (Pl's Opp'n Ex. 10.) On December 8, 2013, Plaintiff sent a request for validation to Bayview. (Pl's Mot. Ex. 2.) On December 20, 2013, Bayview notified Plaintiff that it received her letter regarding the loan and would respond in due time. (Pl's Mot. Ex. 7.) On January 11, 2014, Bayview sent another debt validation letter,

---

[1] The Court also asked Plaintiff where she lived. Oddly, she refused to say. Not only was the answer to this question relevant to the merits of Plaintiff's FDCPA claim, but it also relates to Plaintiff's standing—which courts have a duty to consider even *sua sponte*. See *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008). The FDCPA applies only to consumer debts. 15 U.S.C. § 1692a(5) (debts must arise out of transactions which "are primarily for personal, family, or household purposes."). A mortgage loan on a Texas property may not be a consumer debt under the FDCPA where Plaintiff claims she lives somewhere in San Diego, California. In any event, Plaintiff's FDCPA claims fail for other reasons as discussed below.

[2] Plaintiff's Objection to Ms. Torres' Declaration is overruled. (Docket No. 91.) The Court requested the supplemental declaration during the motion hearing.

which included a copy of the Note and Notice of Service Transfer. (Pl's Mot. Ex. 9.) On January 26, 2014, Plaintiff sent another letter to Bayview, again explaining her dissatisfaction with the debt validation letter. (Pl's Mot. Ex. 1.) On May 12, 2014, Bayview sent a Notice of Default to Plaintiff. (Pl's Opp'n Ex. 11.)

In addition to correspondence by mail, Bayview telephoned Plaintiff on eleven occasions from 2012 to 2014.

## II. Procedural Background

Plaintiff initiated this action on June 10, 2014. (Docket No. 1.) The following claims remain: (1) failure to verify the debt under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g(b) against Bayview; (2) use of false or misleading information under the FDCPA, 15 U.S.C. § 1692e against Bayview and Ms. Coro; (3) violations of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788.17 against Bayview and Ms. Coro; and (4) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A) against Bayview. (Docket Nos. 48, 60.)

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In considering a summary judgment motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor. *Anderson*, 477 U.S. at 255.

A moving party bears the initial burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.* The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise a genuine issue of material fact; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252.

A moving party is only entitled to summary judgment where it has shown that there are no genuine issues of material fact, even if the nonmoving party does not offer materials in support of its opposition. *Henry v. Gill Indus. Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Summary judgment is inappropriate where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact. *See id.* "The filing of cross-motions for summary judgment 'does not necessarily mean that there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other.'" *Hahn v. Massage Envy Franchising, LLC*, No. 12cv153, 2014 WL 5100220, at *3 (S.D. Cal. Sept. 25, 2014) (citation omitted); *see Halbert v. Cnty. of San Diego*, No. 07cv1607, 2010 WL 1292163, at *6 (S.D. Cal. Mar. 30, 2010).

## DISCUSSION[3]

### I. Verification under 15 U.S.C. § 1692g(b)

Plaintiff argues that she disputed the debt and requested validation from Bayview as early as November 14, 2012, yet she never received validation. She argues that because Bayview sent debt collection letters in October and November 2013, Bayview violated the statute because it did not validate the debt before resuming debt collection.

---

[3] The Court denies Plaintiff's requests for judicial notice (Docket Nos. 74-5, 81, 84) as untimely, irrelevant and/or subject to dispute. *See* Fed. R. Evid. 402; *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 991 n.8 (9th Cir. 2012) (declining to take judicial notice of facts not relevant); *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 975-76 (9th Cir. 2006); *see also* Docket No. 46, Mar. 23, 2015 Order at 4-5.

In response, Bayview produced a letter sent to Plaintiff on December 14, 2012, which includes the amount owed and the name and address of the original creditor, among other information. Plaintiff attests that she did not receive the December 14 letter, and even if she had, it does not constitute validation under the Act.

If a consumer disputes a debt, the debt collector must stop collection efforts "until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). "[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173-74 (9th Cir. 2006) (adopting the Fourth Circuit's test outlined in *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999)).

Plaintiff only contends that she did not receive the December 14 letter. However, receipt is not an element of section 1692g. *See Mahon v. Credit Bureau*, 171 F.3d 1197, 1201 (9th Cir. 1999) ("We hold that section 1692g(a) requires only that a Notice be 'sent' by a debt collector."). Following the same type of analysis as conducted in *Mahon*, section 1692g(b) only requires that verification be *mailed*. "Nowhere does the statute require receipt of the [verification]." *Id.*

Plaintiff's affidavit is insufficient to rebut Bayview's evidence that the letter was mailed.[4] The record reveals that the communications between Bayview and Plaintiff occurred either by mail or telephone. Neither Party presents any evidence, or even argues, that documents were exchanged via fax or email or any other medium. In other words, there is no dispute that delivery of any documents between parties was done by

---

[4] It appears that Bayview uses "responded," "provided," and "sent" interchangeably, meaning "mailed." Bayview does not use any variation of the word "mailed" in its papers. All correspondence from Bayview to Plaintiff, which was submitted by both Parties, is addressed to Plaintiff's post office box.

mail. Thus, no genuine issue of fact exists as to whether the letter was mailed. It was.

Moving on to the issue of verification. Plaintiff is correct in that the Ninth Circuit has approved of verification under section 1692g where the debt collector provides an itemized statement of the debt to the consumer. *See Clark*, 460 F.3d at 1167; *Mahon*, 171 F.3d at 1199. However, while an itemized statement is satisfactory, it also exceeds the requirement under the Act. *Clark*, 460 F.3d at 1173-74. Last year, in *Zhang v. Countrywide Home Loans, Inc.*, the Court of Appeal affirmed the district court's order holding that the debt collector verified the debt by sending a letter listing the plaintiff's address, the date that the deed of trust was secured on the property, and the name and address of the original creditor. 601 F. App'x 567, 567 (9th Cir. 2015), *aff'g* No. 11-cv-3475, 2012 WL 1245682, at *11 (N.D. Cal. Apr. 13, 2012). There is no indication that the verification letter in *Zhang* confirmed the amount owed in writing. *See* 2012 WL 1245682, at *11. The plain text of section 1692g(b) and a reading of Ninth Circuit case law reveals that verification is simply a writing from the debt collector to the consumer (1) confirming the amount of the alleged debt or (2) listing the name and address of the original creditor.

The December 14 letter goes beyond what is required for verification under the FDCPA. It states that it is responding to Plaintiff's "several letters" and "inquiries," including a qualified written request, regarding the mortgage loan. The letter included loan origination documents that Bayview had in its possession and that it "believe[d] Plaintiff] received at loan closing." The letter included the Note, which stated the name and address of the original creditor—Ryland Mortgage Company. That in itself is sufficient to satisfy the verification requirement. In addition, the letter restated the amount owed as $153,664.77. The December 14, 2012 letter and its enclosures satisfy section 1692g(b).

Viewing the evidence in the light most favorable to Defendant, Bayview sent the letter to Plaintiff and it contained sufficient information to validate the debt pursuant to section 1692g. Plaintiff's Motion is therefore **DENIED**. Even viewing the facts in the

light most favorable to Plaintiff, Plaintiff did not receive the letter, but the letter was sent and it constitutes adequate validation. Defendant's Motion is therefore **GRANTED**.

## II.     False & Misleading Statements under 15 U.S.C. § 1692e

Section 1692e prohibits a debt collector from making "any false, deceptive, or misleading representation[s]" in connection with collecting a debt. Section 1692e(4) specifically prohibits a debt collector from representing or implying that "nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure . . . or sale of any property . . . unless such action is lawful and the debt collector or creditor intends to take such action." The Ninth Circuit has held that the false identification of the original creditor is misleading under section 1692e. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1121 (9th Cir. 2014); *see also Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 996 (D. Ariz. 2010).

Plaintiff argues that Bayview and Ms. Coro made false or misleading statements in a number of ways. First, she argues that informing her that The Bank of New York Mellon is the creditor of the loan was false or misleading because she is unfamiliar with the entity. She also argues that telling her that Bank of America was the previous servicer of the loan was false or misleading because "Bank of America has never been a servicer to Plaintiff." And, she contends that the Notice of Default and Intent to Accelerate threatened that she could lose her property if she did not pay her debt in full, which Defendants had no authority to do.

A review of the evidence reveals that there are no material facts in issue, and that as a matter of law Defendants did not violate section 1692e. Defendants sent Plaintiff an initial communication and debt validation letter within five days of each other as required by section 1692g(a). These initial letters identified The Bank of New York Mellon as the *current* creditor, not the original creditor. The deed of trust shows that Plaintiff obtained a loan from Ryland Mortgage in 2005. A later recorded document also shows that all of Ryland's interest was assigned to The Bank of New York Mellon in 2011. No evidence presented disputes that The Bank of New York Mellon is the current creditor, holding all

beneficial interest in the deed of trust. Thus, Defendants did not make a false or misleading statement with regards to the current creditor.

In addition, the record shows loan payments were being made to Bank of America for a number of years. The Court has attempted to elicit from Plaintiff who she was paying if not Bank of America, but Plaintiff refused to provide that information and has been uncooperative. There are also letters from Bank of America to Plaintiff discussing the same loan at issue in this case. These letters are addressed to the same post office box that Plaintiff claims she has had for decades and where Bayview's transfer of service notice was sent. Finally, before and after Bayview began servicing Plaintiff's loan, Bank of America sent Plaintiff letters notifying and confirming the transfer to Bayview. To Plaintiff's knowledge, she has never had an account with Bank of America and "Bank of America N.A. has never been a servicer" to her. However, Plaintiff must present more than a scintilla of evidence in support of her claim. *See Anderson*, 477 U.S. at 252. Here, the evidence shows that Bank of America serviced the loan for some length of time immediately preceding Bayview. As such, Defendants did not make a false statement with regards to the previous servicer.

Finally, it appears Plaintiff contends that Bayview had no authority to send the Notice of Default. As noted above, the record shows that Bayview is a proper servicer of the loan, that it may collect payments on the loan, and may take the necessary steps on behalf of the creditor. Plaintiff presents no evidence to negate this. Accordingly, Defendants did not make a misleading statement by sending the Notice of Default.

There are no genuine issues of fact here. Even viewing the facts in the light most favorable to Plaintiff, she is not entitled to judgment as a matter of law. The Court therefore **GRANTS** Defendants' Motion and **DENIES** Plaintiff's Motion.

### III. Violation of Rosenthal Act

California's Rosenthal Fair Debt Collection Practices Act requires debt collectors to comply with the FDCPA. Cal. Civ. Code § 1788.17. As the Court granted Defendants judgment as a matter of law with respect to Plaintiff's FDCPA claims, Defendants are

also entitled to judgment as a matter of law on Plaintiff's Rosenthal claim. Accordingly, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendants' Motion.

## IV. Violation of the TCPA

The Telephone Consumer Protection Act prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— (iii) to any telephone number assigned . . . to a cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

Plaintiff argues that Bayview placed at least eleven automated phone calls to her cell phone number ending in "2400" without her consent. She declares in her affidavit that she was called by 215-664-1300, and at the beginning of each call there was an "artificial time delay." Plaintiff submits a handwritten call log and photographs of a cell phone showing Bayview's number on the screen.

On the other hand, Bayview contends that the 1300 number is a landline in Pennsylvania that "cannot be used" for autodialed calls.[5] Defendant provides no evidence Plaintiff gave Bayview prior express consent to contact her cell phone number. As such, all that remains is a dispute as to whether or not Bayview called Plaintiff's cell phone using an automated dialing system or an artificial or prerecorded voice.

As a genuine issue of material fact exists, neither party is entitled to judgment as a matter of law on this issue. However, the Court finds it appropriate to allow the parties to conduct limited discovery, as they may be able to properly support their claims with additional evidence. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an

---

[5] Bayview's alternative argument that it was permitted to call Plaintiff using an automated system because it had an established business relationship with her is not persuasive. *See Daniels v. ComUnity Lending, Inc.*, 13cv488, 2015 WL 541299, at *7 (S.D. Cal. Feb. 09, 2015); *Blair v. CBE Grp., Inc.*, 13-cv-134, 2013 WL 5677026, at *4 (S.D. Cal. Oct. 17, 2013) (noting that the business relationship exemption does not apply to calls to cell phones).

assertion of fact . . . the court may (1) give an opportunity to properly support or address the fact."). Discovery should concern whether the 1300 phone line is able to and did use an automated system to call Plaintiff's cell phone on the dates Plaintiff claims and whether or not Plaintiff provided Bayview prior express consent. The Parties' Motions are therefore **DENIED without prejudice**.

## V.   Local Civil Rule 5.1(j)

On the first page of every filing, "[t]he name, address and telephone number . . . of an individual appearing pro se, must be printed or typewritten in the space to the left of the page's center and beginning at line one." CivLR 5.1(j)(1).

Plaintiff's filings include her name and an "in care of" address in Carlsbad, California. Plaintiff is therefore **ORDERED** to comply with Local Rule 5.1(j)(1). Any future filings by Plaintiff must include *her* address and *her* telephone number.

## CONCLUSION[6]

Plaintiff's Motion for Summary Judgment is **DENIED**. Defendants' Motion for Summary Judgment is **DENIED in part** and **GRANTED in part**. The Motions for Summary Judgment as to the TCPA claim only are **DENIED without prejudice**.

The Parties are **ORDERED** to conduct additional limited discovery related to Plaintiff's TCPA claim. Renewed motions for summary judgment shall be filed on or before **June 6, 2016**. Any Oppositions thereto shall be filed on or before **June 22, 2016**. At that time, the matter will be taken under submission.

It is further **ORDERED** that Plaintiff ensure that her filings comply with the Local Rules.

**IT IS SO ORDERED.**

Dated: April __, 2016

HON. ROGER T. BENITEZ
United States District Judge

---

[6] The Parties' objections to the evidence are overruled to the extent they are inconsistent with this Order.